# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br>**Jose Luis Alonso and**<br>**Erika M. Alonso,**<br><br>**Debtors.** | **Bankruptcy Case**<br>**No. 14-41215-JDP** |

### MEMORANDUM OF DECISION

**Appearances:**

Paul Ross, Paul, Idaho, Attorney for Debtors.

Kathleen A. McCallister, Meridian, Idaho, Chapter 13 Trustee.

### *Introduction*

In this chapter 13[1] case, the Court is called upon to address

complicated dueling motions to modify a confirmed plan. The first motion

was filed by Debtors Jose Luis Alonso and Erika Molina Alonso, Dkt. No.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037.

MEMORANDUM OF DECISION – 1

89; the other was filed by the chapter 13 trustee, Kathleen A. McCallister

("Trustee"), Dkt. No. 107.  The Court conducted a hearing on both motions

on February 21, 2017, at which the parties were asked to file briefs, which

they did.  Dkt. Nos. 125 and 128.  Having taken the issues raised by the

motions under advisement, the Court has now considered the parties'

arguments, as well as the applicable law, and disposes of the motions via

this decision.[2]

### *Facts*[3]

This chapter 13 case was filed on October 28, 2014.  Dkt. No. 1.  After

several hearings, and considerable wrangling with Trustee, Debtors'

second amended plan was eventually confirmed with Trustee's approval

on August 17, 2015.  Dkt. Nos. 63, 76.  However, it did not provide 100%

payment to Debtors' unsecured creditors.  *Id*.  Debtors' applicable

commitment period is 36 months.  Dkt. No. 14.  The term of Debtors'

---

[2] What follows constitutes the Court's findings, conclusions, and reasons
for its decision.  *See* Fed. R. Bankr. P. 7052; 9014.

[3] These facts are derived from the Court's docket, as well as the Stipulated
Facts and Documents jointly filed by Debtors and Trustee.  Dkt. No. 112.

MEMORANDUM OF DECISION – 2

confirmed plan was 54 months.  Dkt. No. 6. at ¶ 2.1.  And, importantly,

Debtors' confirmed plan contained the following plan provision:

> Debtor(s) projects income tax refunds during the term of this
> plan.  During the applicable commitment period of the plan,
> as defined in 11 U.S.C. § 1325(b)(4), the Debtor(s) will turn
> over to the Trustee all net income tax refunds.  At any time
> during the term of the plan, Debtor(s) shall be entitled to use a
> tax refund to pay taxes due any other taxing authority;
> however, the Debtor(s) shall remit any net income tax refund
> balance to the Trustee.  Upon the Trustee's stipulation with
> the Debtor(s) and an order of the Court, the Debtor(s) may
> retain, in whole or in part, certain net income tax refunds
> during the term of the plan to facilitate the terms of this plan
> or to meet other reasonable and necessary needs of the
> Debtor(s).

*Id*. at ¶ 2.2.

In 2015, Debtors fell behind on the post-petition payments they were

to make directly to the creditor holding their home mortgage[4] in the total

---

[4] In the parties' facts, as well as at the hearing, Debtors spoke only of the
arrearage on their mortgage.  However, Debtors also were delinquent on plan
payments to Trustee, due to confusion about when their payments should begin.
Dkt. Nos. 76, 89.  At confirmation, the plan payment arrearage was $2,750.  Dkt.
No. 76.  To cure it, Debtors agreed at confirmation to pay an additional $62 per
month above the usual plan payments beginning in August 2015, and continuing
until the arrearage was fully cured.  Moreover, there was apparently an
arrearage that occurred because of an incorrect amount on the wage withholding
order, as well as one due to miscommunication by Debtors' counsel to Debtors

MEMORANDUM OF DECISION – 3

amount of $4,161.68.  To cure the arrearage, Debtors, Trustee, and the

lender agreed to the entry of an order allowing Debtors to pay that

arrearage via Trustee through the plan by increasing the plan payment by

$109 per month.  Dkt. No. 82.

Debtors filed their 2014 tax return and in 2015 received a federal tax

refund totaling $2,919.  This refund included no amounts for any earned

income credit ("EIC") or additional child tax credit ("ACTC").  In

accordance with the plan provision quoted above, $1,066 from the federal

refund was used to pay taxes owed to the State of Idaho, and Debtors

remitted the balance of the refund, $1,853, to Trustee.  Dkt. No. 112 at ¶ 4.

For the 2015 tax year, in 2016, Debtors received another federal

refund, this time totaling $5,610.  This amount was comprised of an $1,853

overpayment of taxes withheld from their income, an EIC of $1,915, and

---

regarding the amount they needed to turn over to Trustee.  Dkt. No. 89 at ¶ 2.
The source of the arrearage is not necessarily important; suffice it to say that as of
December 31, 2016, the total amount of the arrearage was $8,055.  Dkt. No. 112 at
¶ 6.

MEMORANDUM OF DECISION – 4

$1,842 from an ACTC.  *Id*. at ¶ 5.  Of the total refund, $915.69[5] was offset to

pay a 2014 tax liability, and $4,694.31 was paid to Debtors.  *Id*.  Debtors

also received an income tax refund from the State of Idaho in the amount

of $679.  *Id*.

Of the total 2015 tax refunds, $6,289, Debtors have given only $1,187

to Trustee, and retained $5,102.  *Id*.  On October 10, 2016, Debtors filed a

motion to modify their confirmed plan to allow them to use tax refunds to

cure the accrued arrearage; they did not seek modification of any other

provision in their confirmed plan, including the provision addressing tax

refunds.  Dkt. No. 89.

On November 7, 2016, Debtors amended their schedules to disclose

the 2015 income tax refunds, as well as to claim the EIC and ACTC

amounts exempt.  Dkt. No. 96.  Trustee initially opposed the exemption

claim, but she later withdrew her objection.  Dkt. No. 121.  However,

---

[5] This amount was owed to the State of Idaho and was supposed to be
paid from the 2014 offset, but apparently was not.  The parties agree that Trustee
cannot give Debtors a credit for the $915.69 offset.  Dkt. 112 at ¶ 5.  This amount
will be included in the total tax refund received by Debtors for the 2015 tax year.

MEMORANDUM OF DECISION – 5

Trustee objected to Debtors' motion to modify on several grounds. Most notably, Trustee argued that Debtors should not be permitted to claim the 2015, post-bankruptcy, EIC and ACTC amounts exempt. In the alternative, if the credit amounts were exempt, then Trustee contends that the credits must, nonetheless, be included in Debtors' income calculations, and as a result, are available to be paid into the plan. Finally, Trustee urged that Debtors should not be allowed to "retroactively modify" the provisions of their confirmed plan which required turnover of the tax refunds. Dkt No. 94.

On December 19, 2016, Trustee filed a separate motion to modify the confirmed plan, or alternatively, to dismiss the case, because Debtors had received increased income which should have been paid into the plan. Dkt. No. 107. Debtors objected to Trustee's motion. Dkt. No. 111. As noted above, after a hearing, the Court took the motions under advisement.

### *Analysis and Disposition*

### I. Debtors' Motion to Modify

MEMORANDUM OF DECISION – 6

As it was the first filed, the Court initially considers Debtors' motion

to modify their confirmed plan in which they seek to use the tax refunds to

cure their plan payment arrearage.  Debtors suggest that, between the

wage withholding order issued by the Court to their employer, as well as

the additional amounts above the plan payments they are currently

committed to pay toward the arrears, at the conclusion of 54 months, the

arrearage will amount to $5,865.31.  Though they are not required by the

Code to do so, through their modification, Debtors propose to extend the

term of their plan to 60 months, and to continue to pay the same $821[6]

monthly payment during those additional six months, with those

"additional" payments committed to reducing the arrearage.  While this

approach will result in no additional distributions to their creditors,

Debtors project this will reduce the arrearage to a mere $939.31.  Upon

---

[6] There is some confusion about the amount of the payments Debtors are
currently making.  In their motion, Debtors refer to the "$821 monthly payment"
while Trustee in her motion references increasing their plan payments "from
$650 per month" to $1,150.  Dkt. Nos. 89 at ¶ 4 and 107 (final paragraph).  While
the base monthly payment in the plan is $650, the prior plan modifications
designed to cure other arrearages increased the payment to $821 ($650 + $62 +
$109 = $821).

MEMORANDUM OF DECISION – 7

conclusion of their plan, Debtors propose to pay the remaining arrearage

from their "fourth year" tax refunds.  Additionally, they propose that any

additional amounts they pay into the plan, including exempt tax refunds,

should be applied to reduce the arrearage and potentially shorten the plan

term.  Finally, Debtors seek to use the now-exempt 2015 EIC and ACTC

portions of their 2015 tax refund to pay toward the arrearage, which could

also potentially shorten the plan.

While Debtors' proposed modification is multi-faceted, it is

important to note what Debtors do not ask to do.  They do not seek to

modify the terms of their confirmed plan to have future EIC's and ACTC's

(the "tax credit" portions of their federal tax refunds) treated differently

from that portion of their refunds attributable to overpayment of taxes

through withholdings.  Rather, implicit in Debtors' motion, is their request

that the Court determine that refundable federal tax credits, such as EIC

and ACTC, are not included within the term "tax refund," as used in their

confirmed plan.  If the Court accepts Debtors' tacit invitation, it means,

effectively that, under the terms of their plan, Debtors are not, and never

MEMORANDUM OF DECISION – 8

were, required to turn those amounts over to Trustee.

A.    *Modification Basics*

The Code permits modification of a plan following its confirmation under several circumstances, of which two are potentially relevant here: (1) to increase or reduce the amount of payments on claims of a particular class provided for by the plan; and (2) to extend or reduce the time for such payments.  § 1329(a).  When a modification is sought, this Court must then decide whether the proposed modification complies with § 1329(b)(1), which provides that "[s]ections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section."  This reference to § 1325(a) requires, among other things, that a modified plan be proposed in good faith under § 1325(a)(3).  Good faith determinations are made on a case-by-case basis after considering the totality of the circumstances.  *In re Mattson*, 468 B.R. at 367 (citing *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1224-25 (9th Cir. 1999); *550 W. Ina Rd. Trust v. Tucker (In re Tucker)*, 989 F.2d 328, 330 (9th Cir. 1993); *Goeb v. Heid (In re Goeb)*, 675 F.2d 1386, 1390 & n.9

MEMORANDUM OF DECISION – 9

(9th Cir. 1982); *Symrnos v. Padilla (In re Padilla)*, 213 B.R. 349, 352 (9th Cir.

BAP 1997)); *In re Stitt*, 403 B.R. 694, 700 (Bankr. D. Idaho 2008). The

burden of establishing good faith rests with Debtors. *In re Stitt*, 403 B.R. at

700 (citing *Smyrnos,* 213 B.R. at 352). Whether to approve a plan

modification under § 1329 is discretionary. *Mattson v. Howe (In re Mattson)*,

468 B.R. 361, 366 (9th Cir. BAP 2012).

B.      *The Tax Credit Portions of Debtors' Refunds*[7]

In chapter 13 cases, because the Code does not mandate otherwise,

debtors may choose how to treat the tax refunds they anticipate receiving

during the plan term. *See* § 1322(b)(11) (instructing that a chapter 13 plan

may include "appropriate provision[s]" not inconsistent with the Code.)

Although it may be varied under appropriate circumstances, this District

has adopted a form chapter 13 plan which contains the provision quoted

above for use in cases where the debtors project they will receive "tax

refunds." L.B.R. 2002.5(e) (requiring that a debtor "use the standard

---

[7]  The Court need not distinguish between the EIC and the ACTC in this decision, as the differences between them "are insignificant for chapter 13 bankruptcy purposes." *In re Skougard*, 438 B.R. 738, 741 (Bankr. D. Utah 2010).

MEMORANDUM OF DECISION – 10

approved chapter 13 plan . . . for this district with such alterations as may

be appropriate in a particular case.")  Debtors' confirmed plan conforms to

the District's form.

As a practical matter, if a proposed plan commits tax refunds to plan

payments, the debtors may simply agree to turn them over to the trustee

when received, or the debtors may prorate the expected refund over 12

months, thereby increasing their current monthly income by one-twelfth of

the expected annual refund.  If the debtors' reasonable expenses offset the

anticipated refund, the debtors would not need to pay any additional

amounts over to the trustee.  In this way, chapter 13 trustees are not

automatically entitled to receive the debtors' tax refunds, even though the

plan may not pay creditors' claims in full.

1.    The Parties' Arguments

Of course, in this case, Debtors committed, via their confirmed plan,

to pay over to Trustee all "tax refunds" they received during the

applicable commitment period.  Via their proposed modification, they

now seek to allow exceptions to that plan provision, arguing that, because

MEMORANDUM OF DECISION – 11

refundable federal "tax credits" are exempt, they should not constitute

"tax refunds," which are not exempt, and thus Debtors should not be

required to give them to Trustee to distribute to their creditors.

Trustee counters with two arguments, effectively seeking to force

Debtors to elect one of two approaches to dealing with their plan payment

predicament and the tax credits.  First, Trustee reminds Debtors that, in

their confirmed plan, they agreed to pay over *all* tax refunds, which

includes the amounts attributable to the EIC and ACTC, and that they are

bound by that agreement unless the plan is modified.  Moreover, even if

they modify the confirmed plan to allow them to retain the tax credits,

such changes can only impact their obligation to turn over the credits

going forward, not retroactively.  According to Trustee's second argument,

if Debtors intend to keep the EIC and ACTC portions of their tax refunds

going forward, then they must factor them into their projected disposable

income calculations to determine the amount of future monthly plan

payments.  Under either of these arguments, Trustee urges the Court to

MEMORANDUM OF DECISION – 12

reject Debtors' proposed plan modification.[8]

> ### 2. Are the Tax Credits "Tax Refunds" for Purposes of Debtors' Chapter 13 Plan?

Though Trustee disagrees, Debtors argue that, because they are exempt, refundable federal tax credits should be regarded as fundamentally "different" from the income tax withholding portions of their "tax refunds." Therefore, in Debtors' view, their confirmed plan should not be construed to bind them to give the credit funds to Trustee.

Debtors' argument runs counter to the long-standing case law in this District. In *In re Stevens*, 90 I.B.C.R. 386 (Bankr. D. Idaho 1990), a chapter 13 trustee filed a motion for turnover seeking an order compelling the debtors to pay over their tax refunds based upon a provision in the confirmed plan requiring debtors to pay to the trustee, "all tax refunds due

---

[8] While Trustee originally objected to Debtors' exemption claims for both the EIC and ACTC portions of their refund, she withdrew that objection. Thus, in addressing the parties' positions, the Court assumes that those funds are exempt. *See In re Jones*, 107 B.R. 751, 752 (Bankr. D. Idaho 1989) (the EIC "due to its nature as social welfare relief is exempt property pursuant to Idaho Code § 11-603(4)") and *In re Farnsworth*, 558 B.R. 375, 381 (Bankr. D. Idaho 2016) ("Debtors' exemption claim for the portion of their 2015 federal tax refund attributable to the ACTC under Idaho Code § 11-603(4) is proper.")

MEMORANDUM OF DECISION – 13

the debtor(s) during the term of the plan in excess of $600 per year." *Id*.  A

substantial portion of debtors' tax refunds were attributable to the EIC.  In

resisting the trustee's request for turnover of the tax credit, debtors

pointed to language in an earlier decision from this Court, stating:

> The normal income tax refund is an amount actually deducted
> from taxpayer earnings in excess of the amount required by
> accurate computation of the rate applied to actual income . . . .
> the earned income credit is given effect through refund, but it
> is not a refund of taxes previously paid . . . the effect of the
> earned income credit legislation is to put money in the
> pockets of certain needy taxpayers after tax returns are filed,
> and not to reduce their tax burden during the tax year.

*In re Jones*, 107 B.R. at 752 (quoting *In re Searles*, 445 F.Supp. 749, 752 (D.

Conn. 1978)).  Based upon the Court's statement in *Jones,* the debtors in *In*

*re Stevens* argued that EIC refunds ought to be treated differently than

income tax refunds.

The Court disagreed with the debtors.  While the quoted language

in *In re Jones* was appropriate in the context in which it was written – that

of considering whether the EIC benefits were exempt under Idaho law – it

concluded that any differences between tax credits and refunds were not

MEMORANDUM OF DECISION – 14

germane in determining the meaning of the provision in the debtors'

confirmed plan.  As the Court explained:

> [I]n interpreting this provision of Debtors' plan, the Court
> need not and should not attach technical definitions to
> commonly used terms.  To do so would make administration
> and understanding of a plan's terms unduly complicated to
> debtors, creditors and trustee.
>
> Here, while technically correct, few would initially
> recognize the distinction advocated by Debtors between the
> terms "tax refund" and "earned income credit."  Because of
> this, most would likely assume, in the Court's opinion, that
> when the plan calls for tax refunds to be surrendered to the
> Trustee, this would include all sums remitted to Debtors by
> the Internal Revenue Service.  In addition, if the difference is
> significant to Debtors, the plan may be drafted initially in
> such a manner as to fairly advise all concerned that the earned
> income credit may be subject to special treatment.

*In re Stevens*, 90 I.B.C.R. at 387.

As in *In re Stevens*, in this case, while the statutory purpose for the

EIC and ACTC "tax credits" paid to Debtors technically differs from the

amounts withheld from their income, the Court declines to require

debtors, creditors, and trustees to assign such a fine distinction in

understanding the meaning of the provisions of this District's form plan.

MEMORANDUM OF DECISION – 15

Instead, for simplicity and fairness, the Court prefers a more generic

definition for the plan's provision:  "tax refunds" encompasses all

payments received by debtors from the state or federal government as a

result of the filing of the debtors' tax returns.  As this Court noted in *In re*

*Stevens*, here, if debtors wish to retain the "tax credit" portions of their tax

refund, they may include specific provisions in their proposed plan to

make that clear.  *See e.g.*, *In re McCormick*, 354 B.R. 246, 254 (Bankr. C.D. Ill.

2006) (construing a plan provision which required debtors to "to turn over

to the Trustee 100% of all Federal and State income tax refunds received by

them during the term of the Second Amended Chapter 13 Plan, excepting

only any Federal income tax refund constituting earned income credit.");

*In re Royal*, 397 B.R. 88, 91 (Bankr. N.D. Ill. 2008) (plan requiring that the

debtor "pay to the Chapter 13 trustee any federal income tax refunds

received during the first three years of this plan; HOWEVER, this shall not

include any earned income credit received by debtor.")

As noted above, the Code did not restrict Debtors' prerogative to

propose in their plan that they retain and utilize exempt refundable tax

MEMORANDUM OF DECISION – 16

credits.  However, once confirmed, the terms of a chapter 13 plan bind not

only creditors and the trustee, but also the debtors.  § 1327(a).  While the

Court's decision acknowledging the exempt status of ACTC benefits is

recent,[9] EIC payments have been held to be exempt in this District for

nearly 30 years.  Because Debtors here pledged to "turn over to the Trustee

all net income tax refunds" during the applicable commitment period of

the confirmed plan, the Court concludes that their plan requires them to

turn over the EIC and ACTC portions of their 2015 tax refunds to Trustee

for distribution to their creditors.

    3.    <u>Retroactive Modification</u>

Debtors argue, alternatively, that the plan provision mandating

turnover of their tax credits to Trustee may, nonetheless, be "retroactively"

modified, and they propose to do just that so they may retain the 2015 EIC

---

[9]  The 2016 decision of *In re Farnsworth* overruled *In re Steinmetz*, 261 B.R. 32 (Bankr. D. Idaho 2001), which reached a contrary decision.  The latter decision was made on the basis of numerous amendments to the underlying legislation, signaling the credit's intended benefit to low income families.

MEMORANDUM OF DECISION – 17

and ACTC.[10]  The Court declines to allow such a modification under these

facts.

    The Code is unclear on whether a plan requiring payments may,

after the debtor's payment obligation arises, may be modified to relieve

the debtor of that duty.  Debtors' position is arguably correct in that

§ 1329(b)(2) provides that "[t]he plan as modified becomes the plan . . . ."

However, the courts that have considered so-called retroactive

modification situations have not favored them.  Many of those plan

modifications were proposed by chapter 13 trustees who, upon learning

that debtors had realized a significant increase in income after

confirmation, sought to capture the benefit of the increased income for

creditors.  *See e.g., In re Wilhelm*, 2016 WL 5478471 at *3 (Bankr. D. Kan.

Sep. 29, 2016) (rejecting a trustee's argument that "fairness" required

retroactive modification of the plan to increase debtor's monthly payments

---

[10]  In their motion, Debtors do not characterize their proposal to retain the tax credits as a retroactive modification; they consider the change to be a needed clarification of the term "tax refunds" in their plan.  The Court has rejected such suggestion above.

MEMORANDUM OF DECISION – 18

to "catch" debtors' increased post-confirmation income because it "runs

afoul of several Code sections . . . .  Just as a debtor cannot retroactively

reduce her payments via modification, a trustee or creditor cannot seek to

retroactively increase a debtor's payments."); *In re Pautin*, 521 B.R. 754, 765

(Bankr. W.D. Tex. 2014) (observing in this context that "the Court cannot

wind the clock back to recover income that has been spent or dissipated");

*In re Beam*, 510 B.R. 399, 406 (Bankr. N.D. Ga. 2014) (noting "section 1329

does not allow a debtor to retroactively reclassify the status [of a creditor

and strip its lien] when the confirmed plan provided for treatment of the

claim."); *In re Self*, 2009 WL 2969489 (Bankr. D. Kan. Sep. 11, 2009) ("any

such modification can only be made prospectively, and based upon

Debtors' current monthly disposable income."); *In re Walters*, 223 B.R. 710,

713 (Bankr. W.D. Mo. 1998) ("the Court finds no mention or implication in

[the Code] that the amended plan provisions should be applied

retroactively. . . . the amended plan terms simply become the new terms.

The replacement does not alter obligations which have already accrued.").

In many cases, the enhanced income received by the debtors had already

MEMORANDUM OF DECISION – 19

been spent, the debtors could not make increased plan payments going

forward, and the courts concluded that allowing a retroactive increase in

payment would render the modified plan infeasible.  Similarly, if income

decreased significantly after confirmation, yet the debtor has somehow

managed to continue to make required plan payments, courts have

concluded that the debtor should not be able to retroactively modify the

plan to obtain a "refund" of the amounts "overpaid."  The general theme

of these cases is that the binding provisions of a confirmed plan operate as

a contract, and, absent compelling facts justifying a different approach, the

parties must respect those terms until the plan is modified, breached, or

concluded.

Accordingly, reading Debtors' motion to modify their plan to

request, in part, that they be permitted to retroactively retain the EIC and

ACTC portions of their 2015 refund, their motion is denied.

### 4.    Trustee's Projected Disposable Income Argument

The second argument Trustee makes in opposition to Debtors'

motion to modify is that, if Debtors are allowed to keep any portion of

MEMORANDUM OF DECISION – 20

their tax refunds, they must in any event include those funds in determining their projected disposable income under the modified plan going forward.  *See* § 1325(b)(1).

A modified plan must satisfy the confirmation requirements in § 1325(a).  Under the test adopted in the Code, if a creditor or the trustee objects to confirmation of a plan, a debtor must either pay unsecured creditors in full, or demonstrate that all "projected disposable income" to be received by the debtor over the duration of the plan "will be applied to make payments" into the plan.  § 1325(b)(1); *Hamilton v. Lanning*, 560 U.S. 505, 508-09 (2010).  While the Code leaves "projected disposable income" undefined, it specifies how "disposable income" is to be calculated.  This calculation imports another defined term, "current monthly income," which includes "income from all sources that the debtor receives . . . without regard to whether such income is taxable income . . . ." § 101(10A)(A).  In performing this calculation, the Code excludes certain kinds of income, such as Social Security benefits, payments to victims of war crimes, etc.; the Code does not exclude payments received by debtors

MEMORANDUM OF DECISION – 21

under welfare programs and as public assistance benefits.  § 101(10A)(B).

Accordingly, here, Trustee contends that Debtors' EIC and ACTC

payments must be included in calculating their projected disposable

income, and modified plan payments, going forward.  But Trustee is only

partly correct.

If Debtors intended to retain their exempt EIC and ACTC

refundable tax credits from payments under their plan, Trustee is right

that they must factor those amounts into their projected disposable

income.  *See In re Blake*, ___ B.R. ___, 2017 WL 1043573 at *5 (Bankr. N.D. Ill.

March 16, 2017) (explaining "exemptions do not allow a debtor to keep

their tax credit out of the current monthly income calculation . . . .

[a]ccordingly, the Debtors . . . can keep their tax credit portion of their tax

refund by including a prorated version (EIC and [Child Tax Credit]

divided by twelve) of it in their [current monthly income]"; *In re Forbish*,

414 B.R. 400, 403 (Bankr. N.D. Ill. 2009) (noting that debtor's "exemption of

her anticipated 2008 refund based on her earned income credit has no

effect on the disposable income calculation.  The claimed exemption does

MEMORANDUM OF DECISION – 22

not matter because BAPCPA resolved the dispute over whether exempt

assets are included in disposable income. . . . [and] earned income credits

are not an excluded form of income."); *In re Royal*, 397 B.R. 88, 94 (Bankr.

N.D. Ill. 2008) (stating that "the earned income tax credit is income under

the Bankruptcy Code, and must be included in the calculation of a debtor's

[current monthly income].  Since the earned income credit is not 'child

support payments, foster care payments, or disability payments for a

dependent child,' 11 U.S.C. § 1325(b)(2), it is also included in 'disposable

income'. . . .  The court finds that Royal's plan must provide that the

earned income tax credits she receives during the applicable commitment

period are applied to make payments to her unsecured creditors."); *In re

Sohn*, 300 B.R. 332, 337 (Bankr. D. Minn. 2003).

But Trustee is misguided in insisting that the disposable income

rules for confirmation must be applied when a debtor proposes to modify

a plan.  In connection with a § 1329(a) modification, a strict application of

the "best efforts" test of § 1325(b)(1)(B) is not required, and Debtors need

not demonstrate that all of their projected disposable income is devoted to

MEMORANDUM OF DECISION – 23

making plan payments under the modified plan.  *In re Sunahara*, 326 B.R.

768, 781 (9th Cir. BAP 2005) ("Section 1329(b) expressly applies certain

specific Code sections to plan modifications but does *not* apply § 1325(b).

Period.") (emphasis in original); *In re Mattson*, 468 B.R. at 370 (citing *In re*

*Sunahara*, 326 B.R. at 781-82).  In other words, Trustee's argument, that if

Debtors are permitted to modify their plan going forward to retain EIC

and ACTC payments, then the Code requires them to include those

amounts in the disposable income test under § 1325(b), goes too far.

However, the Code is clear that the Debtors' modified plan must be

proposed in good faith.  § 1325(a)(3).  Given that the EIC and ACTC

payments to Debtors are intended to supplement their income to pay their

living expenses, it would be a strange result were the Court to decline to

consider those funds, in some fashion, when deciding whether the

modifications to the plan Debtors have proposed satisfy good faith.

However, as the Court has already held that Debtors may not modify their

plan retroactively to capture those EIC and ACTC funds from the 2015 tax

return, and Debtors have not sought to modify their plan to capture future

MEMORANDUM OF DECISION – 24

EIC and ACTC payments, this discussion is academic at the present.

In summary, because the strictures of § 1325(b) do not bind Debtors in the context of modification, if Debtors were able to retain the 2015 EIC and ACTC funds, there is no requirement that they demonstrate that they have committed all of their projected disposable income to their plan payments.  As such, Trustee's reliance on the projected disposable income test is misplaced in this case.  Rather, any such arguments must be couched in the concept of good faith.[11]

B.     *Use of Fourth Year Tax Refund*s

In their motion to modify, Debtors seek to use at least a portion of their tax refunds to be received in the fourth year of their plan to help cure the arrearage.  To the Court, this would not seem to require a plan modification.  The confirmed plan provides that "*[d]uring the applicable*

---

[11]  The projected disposable income and good faith tests have always been separate.  *In re Meek*, 07.2 I.B.C.R. 23, 33 (Bankr. D. Idaho 2007) (citing *In re Nelson*, 343 B.R. 671, 677 n.10 (9th Cir. BAP 2006)) (explaining that whether a plan has been proposed in good faith is independent of whether the debtor has committed his/her best efforts to the plan under § 1325(b)).  In the modification context, one is simply not applicable.

MEMORANDUM OF DECISION – 25

*commitment period of the plan,* as defined in 11 U.S.C. § 1325(b)(4), the

Debtor(s) will turn over to the Trustee all net income tax refunds." Dkt.

No. 63 at ¶ 2.2 (emphasis supplied).  The applicable commitment period

for Debtors in this case is three years.  Dkt. No. 14.  As such, the confirmed

plan does not require them to turn over the tax refunds beyond those

received during the first 36 months of their plan.  Thus, Debtors should be

able to use any tax refunds after month 36 for whatever purpose they

choose.  It appears they wish to use these funds, at least in part, to cure the

arrearage, and they wish to do it through the plan.  This would not harm

or deprive the other creditors, as they were not entitled to those tax refund

monies according to the confirmed plan at any rate.  There is no indication

of bad faith in proceeding in this fashion.  Therefore, the Court concludes

that the use of so-called "fourth year" tax refunds to partially cure the

arrearage is an acceptable modification to their plan.

C.    *Extension of Plan Duration to Cure Arrearage*

Debtors also propose to extend their plan by an additional six

months to the maximum plan duration of sixty months, and to use those

MEMORANDUM OF DECISION – 26

last six months of plan payments exclusively to cure their arrearage.

Again, this represents a purely voluntary commitment by Debtors, as their

applicable commitment period is only three years.  Moreover, while this

action would benefit only one particular creditor – their mortgage lender –

it would not correspondingly harm their other creditors, as they would

still receive the same amount they would have under the confirmed 54-

month plan.  There is no question of bad faith in this proposal, and the

Court discerns no reason to deny this proposed modification.

Finally, Debtors also seek permission to shorten the plan duration if

they can cure the arrearage more quickly.  This proposition also seems

unobjectionable, so long as their creditors get the equivalent amount

Debtors committed to pay them over fifty-four months.

## II.  Trustee's Motion to Modify

Trustee's separate motion to modify the confirmed plan, or to

dismiss, alleges that Erika's[12] income has increased by $518 per month, and

---

[12] The Court uses the parties first names solely for clarity; no disrespect is intended.

MEMORANDUM OF DECISION – 27

that Debtors did not file amended schedules or report the change in

income, as they were required to do.  Accordingly, Trustee seeks either

modification of the confirmed plan to reflect Debtors' increased disposable

income, or dismissal of the case for Debtors' failure to comply with the

confirmation order.  In its discretion, the Court concludes that dismissal is

not warranted here, but instead, will consider Trustee's modification

request.

In response, Debtors contend that any increases in income were the

result of bonuses received by Erika, and that she will not receive increased

income going forward.  They agree that an increase in plan payments may

be warranted due to the payment of the bonuses, but that the amount

proposed by Trustee is not justified.

At the time the Court confirmed Debtors' chapter 13 plan, Erika's

gross monthly income was $1,400, and after deductions, her net pay was

$1,200.  Dkt. No. 73.  Her income, combined with Jose's, generated a

monthly plan payment of $210 per month for the first two months, then

$650 per month for 52 months, with an additional $62 per month added by

MEMORANDUM OF DECISION – 28

the confirmation order to pay off the arrearage at that time. Dkt. Nos. 63,

76. By agreement of Debtors and Trustee, the Court later ordered that the

plan payment increase by $109 per month to cure the mortgage arrearage.

Dkt. No. 82.

At the time the modification motions were filed, Debtors filed

amended schedules I and J reflecting that Jose's monthly income was

nearly unchanged, at $3,004.21 gross, and $2,588.71 net, while Erika's

income had risen to $2,066.67 gross, and $1,755.23 after deductions.

Debtors explain that while Erika's base income has not increased, she

received certain nonrecurring bonuses, such that her increased income in

the amended schedule I will not reflect her actual income going forward.

In light of the increase in Erika's income by over $500 per month, Trustee

asks the Court to order Debtors to increase plan payments from $650 to

$1,150 per month. Dkt. No. 107. Debtors agree that, based on the bonuses,

they can increase their plan payments somewhat, but not nearly as much

as Trustee requests. They have not suggested a payment amount to

counter Trustee's request.

MEMORANDUM OF DECISION – 29

The Court was given Erika's bi-monthly pay stubs from July 16, 2016, through October 15, 2016. Dkt. No. 101. Each of those stubs shows that her base pay was $750, but that she was paid a bonus of $400-500 for each of the six pay periods represented. Dkt. No. 105. The latest pay stubs indicate that through November 15, 2016, Erika was paid a total of $2,950 in bonuses during 2016. However, not all pay stubs include bonus pay. For example, the pay stubs from October 16, 2016, through November 15, 2016, indicate the base pay of $750 remains constant, but no bonuses were paid during that time. Dkt. No. 105.

Assuming that 23 pay periods had passed in 2016 by the time Erika received her paycheck on November 15, 2016, and assuming there are 26 total pay periods within the year, her bonuses averaged $128.26 per check. However, as the pay stubs show, taxes are withheld from the bonus amounts; those taxes appear to amount to about 16% of her gross pay.[13]

---

[13] For example, for the pay period of September 1 - 15, 2016, Erika's gross salary, including bonuses, was $1,250 and her net pay, after taxes were withheld, was $1,048.37. This indicates Erika received about 84% of her gross pay, which conversely indicates that about 16% in taxes were withheld. ($1,048.37 ÷ $1,250 = .838). This is approximately the same figure in all her paychecks in the record.

MEMORANDUM OF DECISION – 30

Using this information, if the Court assumes Erika received, on average, a bonus of $128.26 per pay period, after deducting taxes, her net bonus pay averaged $107.74 per pay period.[14]  While obviously an imprecise calculation, on this record, the Court finds and concludes an additional $108 per month sum should be paid into Debtors' modified plan.

## *Conclusion*

For all of the above reasons, the Court concludes that, as a package of proposals, Debtors' motion to modify their plan should be denied. Debtors are bound by the terms of their confirmed plan.  Interpreting its provision proposing that all "tax refunds" they receive during the applicable commitment period be paid over to Trustee, the Court concludes Debtors must tender their 2015 EIC and ACTC refundable federal tax credits to Trustee, even though those credits are exempt.  The Court also concludes that, in this case, Debtors may not retroactively modify their plan to treat the EIC and ACTC portions of their refund differently.

---

[14]  $128.26 x .16 = $20.52 in taxes deducted. $128.26 - $20.52 = $107.74.

MEMORANDUM OF DECISION – 31

However, the Court rejects Trustee's argument in response to

Debtors' motion to modify their plan that, if they retain the EIC and ACTC

payments, Debtors must factor those funds into their projected disposable

income under § 1325(b) to determine the amount of any modified monthly

plan payments.  While, generally speaking, EIC and ACTC funds are

properly consider in determining disposable income, and those payments

are relevant to any good faith analysis of a proposed plan modification,

because the Court has concluded that there is no mechanism by which

Debtors may retain the EIC and ACTC portions of their 2015 tax refund in

this instance, those issues do not come into play in this case.

While Debtors' proposed modifications to their plan will not be

approved, should Debtors propose another modified plan, Debtors may

use their "fourth year" tax refunds to partially cure their plan payment

arrearage.    In that modified plan, Debtors may also add six months to the

plan term, making it a 60-month plan, and commit all payments made

during the final six months to pay their arrearage.  Neither of these

modifications will prejudice any creditors.

MEMORANDUM OF DECISION – 32

Trustee's motion to modify the plan will be granted, but only in part. While Trustee's motion seeks to increase Debtors' plan payments by $500 per month, the proof does not support that proposal. Instead, on this record, the Court concludes that Debtors' plan payments should increase, in round numbers, by $108, to $929[15] each month for the remainder of the plan.

Because the Court rejected Debtors' proposal for paying the arrearage, they must further address this problem. Debtors may propose another modified plan consistent with this decision. If they do not, Trustee may move to dismiss the case.

Dated: May 2, 2017

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

_____

[15] Debtors base plan payment will increase from $650 to $758, plus the $62 and $109 additional arrearage payments previously approved. The new total monthly payment will be $929.

MEMORANDUM OF DECISION – 33